251 So.2d 613

**DISTRICT 20, UNITED MINE WORKERS OF AMERICA, an Unincorporated Association**

v.

**W. E. SAMS.**

**6 Div. 762.**

Supreme Court of Alabama.

June 17, 1971.

Rehearing Denied Aug. 26, 1971.

Cooper, Mitch & Crawford, Birmingham, for appellant.

Harris & Esdale, Birmingham, for appellee.

**314**

SIMPSON, Justice.

This is an appeal from a judgment rendered on verdict in favor of the plaintiff in an action of deceit brought by a member of a labor union against his union claiming damages for alleged misrepresentations made to him by an officer of the union. The complaint alleges that the defendant falsely represented to the plaintiff that plaintiff would be eligible for an old-age pension from the United Mine Workers Welfare and Retirement Fund if he kept his union dues paid until he was 60 years of age and that in reliance upon such representations he paid his dues but was denied his pension from the Welfare Fund.

The testimony of plaintiff was that he started working in the mines when he was 18 years of age, in 1922. He joined the union in 1936. In May, 1944, he was severely injured, suffering permanent damage to his eyes and partial loss of his hearing. He has not worked since, being physically unable to do so.

From 1944 up until 1950 the plaintiff drew compensation of $33.00 a month from the Mine Workers. This has nothing to do with the old-age pension. His testimony and that of his wife was that all through the years after his injury, from time to time, and particularly in 1947, 1954, and 1958, he was told by a Mr. Sessions, who was president of the local union in 1947, and a salaried officer of the union, representing District 20 (which comprises all of Alabama) since 1950, that his time "was going on, just like you were in the mines and working." This assurance came, according to Mr. Sams and his wife, in response to their inquiries about whether Mr. Sams would be eligible for a pension when he reached age 60.

There was further testimony that in 1963 Mr. Sessions informed Mr. Sams that he had bad news for him, that he would not get his pension because the funds were short, but that if anything turned up in his favor, Mr. Sessions would let him know.

In 1964, upon reaching age 60, Mr. Sams applied to the United Mine Workers Welfare and Retirement Fund for his pension and was denied on the basis that he had not established employment in classified service in the coal industry during 20 years within the 30 years preceding the date of his application.

It was stipulated by the parties that the United Mine Workers Welfare and Retirement Fund is a trust fund established pursuant to Federal law and is an entity separate and distinct from the United Mine Workers of America, that the requirement which was the basis of the denial of the pension had been in effect since 1953, and that the existence of the regulation had been made known to the United Mine Workers of America and the various local unions in writing.

Suit was brought in April, 1965. The case was tried to a jury which returned a verdict in favor of the plaintiff in the amount of $50,000. This appeal followed.

The appellant first argues that the plaintiff failed to make out a prima facie case for submission to the jury in that the evidence failed to establish that the plaintiff in any way changed his position or suffered any detriment in reliance upon the alleged representations of the defendant. It was not disputed that the appellee had paid his union dues every month since his injury in 1944 up until the time of the trial. The argument advanced by the appellant is that

since he was still paying his dues after having been denied the pension, that it follows that he did not pay the dues in reliance on the representations allegedly made to him that payment of union dues was a condition precedent to the eligibility for an old-age pension from the United Mine Workers Pension and Welfare Fund. In this connection Mr. Sams testified:

"Q. (BY MR. HARRIS:) * * * When Mr. Sessions told you that your time was going on the same as if you were working in the mine, did you believe him or not?

"A. Yes, sir, I believed him.

     \*     \*     \*     \*     \*     \*

"Q. If he had told you that you were not eligible for a pension at any time you talked to him, would you have paid thereafter your dues?

"A. No, sir.

On cross-examination, the following question was put to Mr. Sams:

"Q. * * * You are still paying dues although you have been turned down, aren't you?

"A. Well, I still believe that I will get my pension. * * *"

We agree with the trial court that this testimony supplied sufficient evidence of reliance to warrant submission of the case to the jury, assuming there was evidence bearing on other essential elements of the cause of action sued on. The appellant in brief cites Bynum v. Rucker, 235 Ala. 353, 179 So. 241, in support of its proposition that the court erred in denying the affirmative charge in that the plaintiff failed to establish an essential element of his cause of action (reliance). That case dealt with a purchaser suing to rescind a sale of real estate, alleging that the seller had fraudulently misrepresented the amount or quality of manganese ore thereon. There it was established that the purchaser had considerable mining experience while the seller had little, and further that the purchaser made a thorough inspection of the premises prior to the purchase. The court noted that it did not reasonably appear from the evidence that the purchaser acted upon any representations of the seller touching the quantity or quality of the ore on the lands, but relied upon his own judgment. Such is not the case here.

The testimony of Mr. Sams and his wife was that from time to time over the years, after his accident, they inquired of Mr. Sessions whether or not Mr. Sams would get his pension when he reached age 60. Their testimony was that each time they inquired, until the last time in 1963, that they were told that "His time was going on." Mr. Sessions denied that he had ever told the plaintiff that he would be eligible for a pension, or would get a pension if he paid his union dues.

He did testify that after Mr. Sams' accident he would come over to his (Mr. Sessions') house from time to time and "I would advise him" but "I couldn't answer compensation questions."

A Mr. Baker, who identified himself as Secretary-Treasurer of the appellant union testified that he had helped some 500 men on their applications for pensions since 1964, and that he averaged more than 100 a year, but that his office had nothing to do with determining eligibility; that was determined in Washington by the Welfare and Retirement Fund.

The real question is whether the plaintiff was justified under all of the circumstances involved in relying on the alleged assurances made to him by the union official. The plaintiff in this case is poorly educated, being unable to see, cannot spell his wife's name. The testimony of Mr. Sessions was that Mr. Sams would come to him from time to time after his injury "for information as to what to do, and I would advise him maybe * * *. I couldn't answer compensation questions."

It was further established that the appellant knew as early as 1953 that Mr.

**316**

Sams would be ineligible for a pension at age 60, because he had not worked a sufficient number of years during the 30 next preceding his application. Yet, Mr. Sams testified that Mr. Sessions told him subsequent to that time that "his time was going on just like he was in the mine." It is a well established principle of law that

> "* * * the principle of right of reliance is closely bound up with a duty on the part of a representee to use some measure of protection and precaution to safeguard his interest. It has been widely stated, as a broad generalization, that a person to whom false representations have been made is not entitled to relief because of them, if he might readily have ascertained the truth by ordinary care and attention and his failure to do so was the result of his own negligence. * * *" (37 Am.Jur.2d, Fraud and

Deceit, § 248, citing Meeks v. Garner, 93 Ala. 17, 8 So. 378) but,

> "In the application of the general rule as to diligence, the circumstances of each case should be considered in order to determine whether the complainant has been guilty of such inexcusable neglect as to preclude him, under the general rule of public policy, from having a remedy against one who has fraudulently abused his confidence. The law does not require extraordinary diligence, and does not ask that a representee be unduly incredulous and skeptical, resort to extremes of precaution or exhaust all possible sources and means of investigation, before he believes. As to those facts which by ordinary diligence cannot be ascertained, it permits a reliance on the assertions of the party who, from his opportunities, has the means of knowledge.

> "The courts seem to be well agreed that where the parties do not stand on an equal footing, or where the means of obtaining information are not equal, the positive representations of the person who is supposed to possess, or does possess, peculiar or superior means of information may be relied on, and under such circumstances, investigation may be dispensed with. Substantially similar is the often-quoted and somewhat more specific principle that one has a right to rely on statements of material facts or on positive statements essentially connected with the substance of the transaction, where they are not mere general commendations or expressions of opinion, and are as to matters within the knowledge of the person making them, as to matters which he assumes to assert as of his knowledge, or as to matters which from their nature or situation are peculiarly within his knowledge. * * * Where, by reason of the representor's superior knowledge or experience with respect to the thing dealt with, or because of relations of friendship or trust existing between the parties, the representee expressly relies upon the honesty of the representor and the latter's representations as to the subject matter, without attempting to ascertain the truth of the representations, the representor is bound to act honorably and deal fairly with the representee and is generally held liable for fraud or misrepresentations, even though the representee might have ascertained the facts by an independent investigation." 37 Am.Jur.2d, Fraud and Deceit, § 253.

The cases from this jurisdiction are in accord. In King v. Livingston Mfg. Co. et al., 180 Ala. 118, 60 So. 143, the court said:

> "If the false statement is made by one who may be fairly assumed to know what he is talking about, it may be accepted as true, without question and without inquiry, although the means of correct information are easily within reach. This has been repeatedly declared. It may be true that 'credulity is but the bastard brother of belief,' yet in such cases the law protects the simple and

foolish, as well as the wise and prudent."

See also Franklin v. Nunnelley, 242 Ala. 87, 5 So.2d 99 and cases collated at 10–A Ala.Dig., Fraud, ☞22.

The plaintiff's testimony was that Mr. Sessions told him over the years after his accident that if he paid his union dues he would be eligible for a pension. Mr. Sessions denied making these statements. There was evidence from which the jury could find that Mr. Sams paid union dues in reliance on these statements. We believe the trial court correctly allowed the case to go to the jury.

■ Appellant's next contention is that the plaintiff herein is bound to know as a member of the union that the constitution and bylaws of the union contain no language authorizing an agent thereof to advise members about pensions. The theory advanced is that since the constitution and bylaws say nothing about a pension, the union cannot be held responsible for representations of its agents and officers which members of the union are bound to know are beyond the authority of the representative making such statements.

This argument is said in brief to be raised by assignments of error Nos. 5, 6, and 7, which are as follows:

"5. For that the Court erred in refusing to give at the request of the Appellant (Defendant) before the jury retired, the following written charge: .

*"Defendant's Requested Charge Number Ten*

" 'I charge you that a member of a labor union is charged with knowledge that the constitution of the labor union of which he is a member contains no express provision or authority for the payment of a pension by that union or other person or association.'

and endorsing thereon before the jury retired,

" 'Refused Ingram Beasley, Judge'

"6. For that the Court erred in refusing to give, at the request of the Appellant (Defendant) before the jury retired, the following written charge:

*"Defendant's Requested Charge Number Eleven*

" 'I charge you that if the constitution and laws governing the defendant labor unions contain no express authority for those unions to pay or authorize the payment of pensions then the agents of that union would have no implied power to do so.'

and endorsing thereon before the jury retired,

" 'Refused Ingram Beasley, Judge'

"7. For that the verdict of the jury and judgment are contrary to the instruction of the Court."

It should be noted that the trial court gave at the request of appellant, the following charges:

"I charge you that the defendant labor unions are not liable for the acts or representations made by agents of said unions or either of them unless said agents were acting within the line and scope of the duties assigned to them at the time said acts or representations were made.

\* \* \* \* \* \*

"I charge you that a member of a labor union is charged with knowledge of the provisions of the constitution and laws of the labor union.

\* \* \* \* \* \*

"I charge you that the plaintiff has the burden of reasonably satisfying you from the evidence that the representations upon which the plaintiff relies were made by an agent of the defendant unions or either of them while acting within the line of scope of his authority as such agent."

Appellant cites Amalgamated Clothing Workers of America v. Kiser (1940), 174

Va. 229, 6 S.E.2d 562, in support of its argument that plaintiff was charged with knowledge of Mr. Sessions' lack of authority to make the representations allegedly made. This case involved a contract made by agents of the union with the plaintiff, which exceeded the agents' authority. The court said as a member of the union, the plaintiff was charged with knowledge of the limited authority of the officers and agents of the union. We do not find that principle controlling here. The version of the evidence evidently believed by the jury was that an agent of the appellant union told the plaintiff that he could not receive his old-age pension at age 60 unless he continued to pay his union dues. This statement was false and was found by the jury to have been made with intent to deceive the plaintiff.

It has long been established in this jurisdiction that,

> "The rule that holds the principal liable for his agent's fraud, tort, or negligence, though committed without the principal's participation or consent, if it is done in the course of his employment, and is not a willful departure from it, is one of general acceptation and sustained by the great weight of authority, and, as to third persons affected by the agent's acts or words, it is sufficient if he acts within the apparent scope of his authority.
>
> \* \* \* \* \* \*
>
> "And ' "it is as much a fraud at law to affirm as true what is untrue, though not known to be so, as to assert what is known to be untrue. The law imposes the duty of ascertaining the truth of the statement before making it, and demands in case of omission that the representation shall be made good." ' \* \* \*
>
> "Such fraud, if it results in damage to the party deceived thereby, will support an action for deceit, whether the transaction in which it is committed relates to personal or real property." Gulf Elec-

tric Co. v. Fried, 218 Ala. 684, 119 So. 685.

■ It was alleged here that the misrepresentations were made by the officer of the union acting within the line and scope of his authority, that they were false or were recklessly made with the intent to deceive the plaintiff. We agree that the evidence supported the conclusion reached by the jury that the plaintiff was justified in relying on such statements made by Mr. Sessions. It was established by the appellant's own evidence that old-age pension matters were handled by the appellant union, handling over 500 in the past few years, handling more than 100 a year. There was evidence that the union undertook from time to time to advise its members of the requirements for pensions. Under these facts, we think the plaintiff was justified in relying on the superior knowledge of the union in matters relating to pensions, even though the pensions were not paid by the union itself, but rather from the United Mineworkers Welfare Fund, a separate entity. The testimony of Mr. Sessions was that Mr. Sams had sought his advice about matters over the years, and that he had advised him over the years, but had never advised him about pensions. Mr. Sams' evidence was to the contrary, he unequivocally testifying that he paid his union dues because he believed the union's agent when he told him that he would be eligible for the pension if he kept his dues paid. The union accepted these dues over the years. The law in this state is that the principal is liable for the fraudulent misrepresentations of the agent, done in the course of his employment, where others rely thereon to their detriment. Logan v. Chastang, 207 Ala. 52, 91 So. 867.

In Supreme Lodge Loyal Order of Moose v. Kenny, 198 Ala. 332, 73 So. 519, this court held:

> " 'The principal is responsible for the acts of his agent done within the scope of

his employment, and in the accomplishment of objects within the line of his duties, though the agent seek to accomplish the master's business by improper or unlawful means, or in a way not authorized by the master, unknown to him, or even contrary to his express direction.'"

This case also cited with approval the following language from Storey on Agency (§ 452):

"'It is a general doctrine of law that, although the principal is not ordinarily liable (for he sometimes is) in a criminal suit for the acts or misdeeds of his agent, unless, indeed, he has authorized or cooperated in them, yet he is held liable to third persons in a civil suit for the frauds, deceits, concealments, misrepresentations, negligences and other malfeasances and omissions of duty of his agent in the course of his employment, although the principal did not authorize or justify or participate in, or, indeed, know of, such misconduct, or even if he forbade the acts or disapproved of them.'"

It is interesting to note that in the foregoing case, the plaintiff was a member of the defendant lodge and the argument advanced by the defendant was the plaintiff was charged with notice as a member thereof that the agent of the defendant lacked authority for the act done since the charter of the lodge was silent with respect to the act allegedly done. The same argument is advanced by appellant here. In *Kenny*, supra, the court observed that the very existence of the lodge depended upon the organization of subordinate lodges where new members may be taken in, that the revenues derived from the members supported the defendant organization in all of its works, and hence it was liable for the torts of its agents acting in the course of employment, authorized or not. See also Birmingham News Co. v. Browne, 228 Ala. 395, 153 So. 773; Standard Oil Co. of Kentucky v. Gunn, 234 Ala. 598, 176 So. 332; Hagood v. Knight, 257 Ala. 64, 57 So.2d 616.

Appellant asserts that the plaintiff's cause of action is barred by the statute of limitations. Its reasoning runs like this:

Plaintiff testified that Mr. Sessions told him on May 21, 1963, that he would not be eligible for a pension. The reason ascribed to this was that the funds were running short. Thus, says the appellant, the plaintiff was put on notice that the representations allegedly made to the plaintiff were not to be carried out. Hence, the argument runs, this put him on notice of the fraud and required him to file suit thereon within one year. The evidence is, however, that the plaintiff filed an application for his old-age pension as soon as he reached age 60, a prerequisite to filing and a prerequisite to receiving a pension, and that the same was denied in September, 1964. This suit was filed in April, 1965.

The appellant is in the anomalous position of arguing that the plaintiff was not justified in relying on the statements of Mr. Sessions that he would be eligible for a pension only if he paid his union dues, but that Mr. Sessions' statement in 1963 to the effect that he would not get a pension was sufficient to put him on notice of the fraud so as to start the statute of limitations running. Appellant is saying that the plaintiff had no right to rely on its agent in making the statement that plaintiff would be eligible for a pension, but is required to rely on the same agent when he tells him that he will not be eligible.

We are unimpressed with this argument. Had Mr. Sams filed his application for an old-age pension on the day Mr. Sessions told him that he would not be getting one, it would have been denied for the reason that he had not at that time reached the age of 60. Mr. Sams had no knowledge of the fraud practiced on him by the appellant until his application was denied in September, 1964, on the ground that he had not worked a sufficient number of years during the next preceding 30 years. The evi-

dence justified the conclusion that it was only then that he realized he would not get his pension even though he had paid his union dues all of these years.

■ In fact, the statment allegedly made by Mr. Sessions in 1963 was that the funds were short but that if anything turned up in the future he would let Mr. Sams know. This could reasonably have been taken by Mr. Sams as an indication the funds might be restored by the time he became eligible for a pension. We conclude the suit was brought within one year after discovery of the fraud.

■ It is argued by appellant that the trial court lacked jurisdiction in that the acts complained of amount to an unfair labor practice and hence jurisdiction is in the National Labor Relations Board, the remedy provided by the National Labor Relations Act being exclusive. 29 U.S.C.A. § 151, et seq.

This is a common law action of deceit. It is not a case arising under the statutes or the Constitution of the United States. We do not read the federal National Labor Relations Act to preempt state jurisdiction in suits like this. Appellant's argument in this regard is without merit.

■ The only remaining argument goes to the amount of the jury award. Appellant contends that the amount awarded is excessive and based upon bias and passion. We have repeatedly held that punitive damages are allowed where the defendant has made false representations intended to defraud the plaintiff and that the award of punitive damages in such cases is discretionary with the jury, acting with regard to the enormity of wrong and the necessity of preventing similar wrong. See cases collated at 10–A Ala.Dig., Fraud, ⊜61. In this case the trial court, after fully and correctly charging the jury as to the governing law on other elements of the cause of action sued on, made the following remarks with regard to damages:

"* * * if after a full and fair consideration of all the evidence in this case, you are reasonably satisfied from that that this plaintiff is entitled to recover, then you would come to a consideration of damages; and it would be necessary that you know what the law says about damages in a case of this kind. Well, under the law of Alabama, we recognize two types of damages. One is what we call, 'Compensatory damages.' This is damages by way of compensation. Damages to compensate one for an injury or wrongdoing. * * *

"Now the other type of damages that the law recognizes is what we call punitive or vindictive damages. The law of Alabama in certain cases authorizes a jury to award what we call vindictive or punitive damages, and these are damages over and above such sum as will compensate the person for his actual loss. The law permits the jury to give punitive damages at its discretion. Not because the party injured is entitled to punitive damages as a matter of right, but rather as a punishment to the wrongdoer and to protect the public by keeping the wrongdoer and others from such wrongdoings in the future. Punitive damages are recoverable only when the wrongful act was done wantonly, willfully, or maliciously, or with circumstances of aggravation. Punitive or vindictive damages are not an award as a matter of right, but rest in the sound legal discretion of the jury to be exercised with the view to the enormity of the wrong as shown by all the circumstances of the wrongful act of the defendant. The jury is authorized to consider the circumstances of the wrongful act and the necessity of preventing similar wrongs. Now, punitive damages might not be recovered in a deceit action, unless fraud was gross, or malicious, or oppressive, and committed with an intention to injure and defraud. Damages in any case are not to be based upon sympathy, prejudice, or bias, and are not to be based upon conjecture, or surmise, or speculation, but must be reasonably definite."

■ We believe that the jury was fairly charged on the issue of punitive dam-

ages. We are not persuaded that the amount awarded indicates prejudice on the part of the jury. The trial court denied a motion for new trial raising similar grounds. Its ruling thereon is presumed to be correct. Birmingham Ry., Light & Power Co. v. Willis, 143 Ala. 220, 38 So. 1016; 2–A Ala.Dig., Appeal & Error ⬦933(1).

The judgment appealed from is affirmed.

Affirmed.

COLEMAN, BLOODWORTH, MADDOX and McCALL, JJ., concur.