This is an appeal from a jury verdict and judgment awarding damages of $27,500 to Earl D. Ridolphi, Jr., against Neil Huffman Volkswagen for a fraudulent and misrepresented sale of a 1974 Datsun 260Z automobile. We affirm.
In October, 1976, Ridolphi, a resident of Alabama, came to Montgomery during the course of his employment as a salesman for a Birmingham insurance firm. While he was in Montgomery, he went to Neil Huffman Volkswagen to purchase a sports car, because he wanted to impress his clients. He decided that the sports car he wanted was a 1974 Datsun 260Z. The price — $4,850, excluding taxes. He discussed the Datsun with John Hinson, the business manager of Neil Huffman, and Paul Mattingly, its general sales manager. Noticing that the car had been repainted, Ridolphi asked Hinson whether it had been wrecked. Hinson stated that the repainting could have resulted from a bad paint job at the factory. Neither Hinson nor Mattingly told Ridolphi that Neil Huffman painted the car, when as a matter of fact, they painted the car twice within a period of three months. Its previous owner had it painted once before its trade-in to Neil Huffman. From the evidence, it appears that in the used car business, a repainted car is a suspect for having been wrecked. That being so, Ridolphi was concerned about the painting.
When the car was placed upon a rack to change its tires, Ridolphi noticed a spot in its rear that had been repaired. When asked about this, Hinson said it was "minor damage to the car if any at all that you can plainly see." This "minor damage" subsequently revealed itself as being major or substantial. For example, a couple of months after he owned the car, Ridolphi was driving it along the highway between Birmingham and Montgomery, on one occasion, and was told over his C.B. radio by another C.B.'er that he was travelling sideways. In other words, the front end of the Datsun pointed toward the center line of the pavement. The rear end pointed toward the shoulder. Subsequently, he observed the spectacle himself by following the car driven by another driver. He then tried to sell or trade it. The highest trade-in value was $2,000 — $2,500. No one would buy it. A witness for Ridolphi testified about the car's moving sideways as follows:
 "Q. The evidence in this case has been, Mr. Sparks, that after the car was purchased it ran down the highway sideways, sort of like that (indicating). Can you tell the Court and jury what would cause that? *Page 702 
 "A. The Datsun 260Z has independent suspension, each wheel is independently suspended and of course you have control on the rear suspension back there that can be shifted one way or the other, normally from an impact such as being laid over on the side or being hit in the side or any type lick that would hit it in the wheel area. You can shift the whole differential, control arms, both axles and the whole works, which apparently had happened on this one as I understand the rear section had to be moved back maybe three or four inches which is a common occurrence on this particular type car in a side impact or the roll-over."
Aside from that damage, once when Ridolphi entered a self-help car-wash, he placed a quarter into a slot, went through — came out — no paint on the hood — it had been left back there in the car-wash.
Ridolphi drove the Datsun about 33,000 miles and spent $750 — $800 for repairs on it. When Neil Huffman refused to "work something out" on the car with him, Ridolphi filed a complaint against it based upon fraud and misrepresentation.
Neil Huffman contends that the evidence is insufficient to sustain a jury verdict of $27,500, the major portion of which would be punitive damages. The actual damages under the evidence were between $3,150 and $3,650.
The statutory law in this state on fraud is found in §6-5-101[1] and § 6-5-102,[2] Code, 1975.
We cannot, as we are urged by Neil Huffman, turn the clock back to 1841, and adhere to the reasoning of Camp v. Camp,2 Ala. 632. The doctrine of caveat emptor, if not already grounded, is a weak bird. The law now is consumer oriented, and federal and state laws (Truth-in-Lending, UCC, for example) have been passed for the protection of the consumer. It now appears that the seller is the one to beware. This certainly appears to be true in the matter of the sale of used cars. It is a rare case when the seller and buyer of a used car stand on equal footing. In most cases the buyer is at the mercy of the seller, and when he pays a substantial portion of his monthly paycheck in car payments, he does not want to drive a car running sideways down the highway, or have the thing come out nude when he drives it through a car-wash. These statements are made to emphasize the statutory law, particularly § 6-5-102. The evidence clearly shows that vital information concerning the Datsun's condition was suppressed by Neil Huffman. Ridolphi asked Hinson point-blank if the car had been wrecked. His answer — "minor damage" and "in good condition" — was a suppression of a material fact that he was under an obligation to disclose. Hinson, by his testimony, gave many evasive answers to questions propounded to him by counsel for Ridolphi. The jury, obviously, saw through them.
We hold that the evidence was sufficient to sustain the jury verdict. Moreover, when the trial judge overruled the motion for new trial, that strengthened the verdict.
Next, Neil Huffman complains about the verdict being excessive. We cannot overrule the trial judge and jury in this case on the issue of excessive damages. In J. Truett PayneCompany v. Jackson, 281 Ala. 426, 203 So.2d 443 (1967), this Court held that the awarding of punitive damages in this kind of case is discretionary with the jury, acting with regard to the enormity of the wrong and the necessity of preventing a similar wrong. See also, United Mine Workers of America v.Sams, 287 Ala. 312, 251 So.2d 613 (1971); Treadwell Ford, Inc. *Page 703 v. Leek, 272 Ala. 544, 133 So.2d 24 (1961). The nature of the conduct on the part of Neil Huffman, as shown by the evidence, justifies the award of the amount of damages.
AFFIRMED.
BLOODWORTH, ALMON and EMBRY, JJ., concur.
TORBERT, C.J., concurs in the result.
[1] § 6-5-101, Code, 1975.
 Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud. (Code 1907, § 4298; Code 1923, § 8049; Code 1940, T. 7, § 108.)
[2] § 6-5-102, Code, 1975.
 Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case. (Code 1907, § 4299; Code 1923, § 8050; Code 1940, T. 7, § 109.)