SHORES, Justice.
This is an appeal from a judgment rendered on a jury verdict in the amount of $35,000 in a case charging fraud in the sale of an automobile. We affirm.
There are facts in this record from which a jury could have concluded the following: That Montgomery Lincoln-Mercury, Inc., (MLM) sold Mrs. Gaioni a Triumph TR7 automobile, represented as being a new automobile, when in fact it had been a demonstrator used by the manager of MLM as such; that it had been entered in a race, had been wrecked, had been repaired in MLM’s body shop, had the odometer changed to show reduced mileage, and was sold to Mrs. Gaioni for $400 over the manufacturer’s list price.
Mrs. Gaioni had owned two TR7’s before she bought this one. She came to MLM’s dealership on May 6,1980, and said she was interested in a TR7. All TR7’s are basically alike, the only differences being in interior and exterior colors. She was shown by a salesman the new TR7’s. She selected a green one with a beige interior, paid $100 down, and the car was held for her until June 2, 1980, when she picked it up and signed a retail installment contract, which designated the car as “new.” Other documents pertinent to the sale designated the car as “new.” The suggested manufacturer’s retail price was $10,115. The cash price quoted to her was $10,516 and the time price $10,928.99. She testified that there was no “sticker” price on the automobile.
MLM suggests that new cars be returned within five days for trim and touch up work. On June 3, Mrs. Gaioni noticed that the paint on the hood had “bubbled up.” A check indicated that the transmission was low on oil, the battery was low on water, and the wells of the carburetor were low. MLM assured her that the paint could be satisfactorily repaired. She left the car in MLM’s shop from June 3 until June 14.
She then drove the automobile to Florida. On the trip, she noticed a rattle in the rear of the car and that the tires were worn on the sides, not the treads. She took the car to a tire repairman, who testified that the “tires were eaten up on it” and asked if she had been racing with the automobile.
A few days later, she put her bicycle in the trunk of the car, and the lining of the trunk disintegrated, appeared to have been singed or burned, and when this happened, she noticed that the car had been damaged in the right rear quarter and had been welded. Mrs. Gaioni then went back to MLM with an attorney. MLM’s manager said the car had not been damaged before the sale to her.
After the suit was filed, the following facts were discovered by deposition or otherwise. The car had been selected by the manager as his demonstrator; one of the salesmen, named Sellers, was asked by the manager to get some gas for him, which the manager paid for, and while on this trip, another car collided with the TR7, damaging the right rear portion. Sellers testified that the other salesmen ribbed him a lot because he had wrecked a new car. A service order was discovered which indicated that the car had been repaired in MLM’s body shop. When the manager of the body shop received a subpoena to submit to a deposition in this case, he told the president of MLM that if he were asked whether the car was wrecked before it was sold to Mrs. Gaioni, he was “going to tell the truth.”
There was evidence that a green TR7, just like this one, was driven by manager Smith in a car race in Dothan on March 9th. The race was described as “driving against the clock; driving through pylons, doing ‘S’ turns. The driver drives as fast as possible and as hard as he can, short of wrecking the car. The racing surface is concrete and the course consists of some straight, some right hand turns, some left hand turns, and some 180’s.” There was evidence that this kind of racing wears tires on the sides.
*930 In addition to this, Mrs. Gaioni testified that she was told that the odometer had been changed.
In response to this, MLM argues that there is no evidence of any “active” misrepresentation on the part of its employees. It also argues that it made no representation to Mrs. Gaioni. The MLM salesman simply showed her the cars, and she picked the one she wanted. MLM argues that the facts do not justify an award of punitive damages. We disagree. The degree of damage to the car in this case is much more significant than what was involved in Boulevard Chrysler-Plymouth, Inc., v. Richardson, 374 So.2d 857 (Ala.1979), and this Court affirmed a $30,000 award. In this case, the evidence of misrepresentation and deceit far exceeds the evidence of fraud in that case. The evidence in this case would support a jury finding that the deception was deliberate, calculated to deceive, and did deceive the purchaser of the automobile in several different ways. Not only did MLM represent that the car was new when in fact it was a wrecked automobile, but it charged her $400 more than the manufacturer’s suggested retail price for one which was really new. It now seems to be saying that it didn’t sell her the car, she was so anxious to buy it that she was willing to pay $400 over list to get it. The jury did not believe MLM’s version of the facts, and we cannot say that it was wrong in believing the buyer’s version. To the contrary, the evidence is overwhelming in support of the buyer’s version.
We hold that the evidence in this case supports a finding that the fraud was oppressive, gross, intentionally perpetrated, and therefore, punitive damages were justified. See also: Neil Huffman Volkswagen Corp. v. Ridolphi, 378 So.2d 700 (Ala.1979), and Crews Chevrolet-Oldsmobile, v. Williams, 394 So.2d 912 (Ala.1981).
The judgment appealed from is affirmed.
AFFIRMED.
TORBERT, C. J., and MADDOX, JONES and BEATTY, JJ., concur.