203 So.2d 443

**J. TRUETT PAYNE COMPANY, Inc.**

**v.**

**Charles B. JACKSON.**

**6 Div. 367.**

Supreme Court of Alabama.

Oct. 26, 1967.

Porterfield & Scholl, Birmingham, for appellant.

Jenkins, Cole, Callaway & Vance, Birmingham, for appellee.

SIMPSON, Justice.

This is an appeal by the defendant from a judgment rendered in favor of the plaintiff in an action for fraud and deceit in the sale of an automobile. The jury returned a verdict in favor of the plaintiff in the amount of $20,000. Defendant filed a motion for new trial which was overruled. This appeal followed.

The case arose out of the following facts:

In June, 1964, appellee Jackson purchased a 1964 Oldsmobile from J. Truett Payne Company, Inc. Mr. Jackson paid the "new-car sticker" price of $4,980 for the automobile, trading his old 1960 Oldsmobile and financing a balance of $3,000.

Mr. Jackson's evidence, which the jury apparently believed, was that the car had been sold to him by the defendant as a new car. The car showed 88 miles on the speedometer when he bought it. J. Truett Payne is a Chrysler dealer, not an Oldsmobile dealer. Jackson testified that appellee's salesman explained that a man in Clanton had ordered the Oldsmobile but that he had sold him a Chrysler and had taken the Oldsmobile off of his hands when it came in.

After Jackson bought the car he became suspicious that it was not in fact a new car. Leading to this suspicion was the fact that although he had paid for a new tag, a Chilton County tag was placed on the car a few days after he bought it. Appellee's salesman explained that one of the men had been in Clanton and picked up a tag while there. When he asked for the tag receipt it could not be found for several days. Finally one was given to him which indicated that the tag had been in the name of one A. L. Young, who was unknown to Jackson. Later, Mr. Jackson found a book of checks on a Clanton bank behind the back seat of the car. When the automobile had about 500 miles showing on the speedometer, it developed mechanical trouble. Jackson had the plugs and points replaced. Subsequently he had the car examined by a mechanic who examined the brake linings and testified that the condition of the brake linings indicated that the car had several thousand miles on it.

It was later discovered and proof was offered at the trial that J. Truett Payne had acquired the car from a Clanton Oldsmobile dealer. Payne had bought the car as a used demonstrator. The evidence was that a J. Truett Payne salesman had gone to Clanton and traded in an older model Oldsmobile for the car in question. He did not disclose to the Clanton people that he was buying the car for J. Truett Payne. He paid for the car with a cashier's check, but testified that the money belonged to J. Truett Payne Company, Inc. Young did not deny that the Clanton dealer had told him that the car was used, that it had been used by one of the employees as a demonstrator; and that it was unknown how many miles the car had on it because the speedometer had been disconnected. Young paid Shelton Motors in Clanton $2,100 cash for the car and traded a used car which was worth about $1,600.

Although appellee was promised one by two salesmen of J. Truett Payne, he never received a new car warranty on the car involved in this case.

When he discovered that the automobile he had bought was a used car, Jackson brought this action for fraud and deceit.

■ The defense made by appellant was that it had represented the car to be "like new", not new; further, that the salesman who sold the car to Jackson did not know where it came from. These are fact questions which the jury resolved in favor of the plaintiff. The jury obviously believed the appellee's version of the case. It was not denied by appellant that Jackson paid the new car price for the automobile and the evidence is overwhelming that the appellant made every effort to keep the history of the automobile concealed from Jackson.

Appellant argues two points for reversal in this court. One, it is contended that the court erred in allowing appellee to

elicit on cross examination statements made by A. L. Young to representatives of Shelton Motor Company in Clanton when the car was purchased. The conversation referred to was between Young and a salesman for Shelton Motors at the time negotiations were going on for the purchase of the car by Young. Appellant elicited from Young on cross examination that he had gone to Clanton and bought the car at the direction of Mr. J. Truett Payne; that Payne paid the money for the car, but that he, Young represented to Shelton Motors that he was buying the car for himself; he admitted that he had lied to the salesman at Shelton Motors in that he told him he had just gotten out of the Navy, that his wife must approve the car and that he was going to Orlando, Florida. Young admitted on cross examination that he had not been in the Navy, had no wife, and had no plans to go to Orlando.

■ It is argued that this testimony was inadmissible, and that the court erred in allowing it. In the first place, the testimony was admissible as affecting the witness' credibility, and further, since the appellant had brought out part of the conversation, the appellee was entitled to bring out the remainder:

> "The rule of our decisions is that, where a part of a conversation has been elicited from a witness on direct examination, the opposite party has the right, on cross-examination, to call for the whole conversation, or to inquire into all the facts and circumstances connected therewith, although they may not be admissible as independent testimony."— Catts v. Phillips, 217 Ala. 488, 117 So. 34.

This evidence was admissible and the trial court correctly allowed it. It should be remembered that this is a fraud case. The evidence with respect to this conversation tended to prove in addition to its impeaching tendencies, that there was involved here an elaborate scheme on the part of the defendant to keep concealed from the purchaser of the automobile its history as a used car. The plaintiff had alleged that the defendant was guilty of fraud and deceit in the sale of an automobile. The evidence with regard to the circumstances of acquisition of the car by defendant tended to show the truth of the allegations. No error can be predicated on its admission on cross examination. We are unimpressed with appellant's argument that the conversation was unrelated to the transaction in question. Rather, we think that the conversation and evidence relating thereto concerned the very transaction which is involved here.

■ The next contention of appellant is that the court erred in refusing to grant a new trial on the ground that the verdict of the jury is excessive. It is no longer subject to question that punitive damages are allowed in this state in fraud cases where the defendant has made false misrepresentations intended to defraud the plaintiff. We have further held that the awarding of punitive damages in such a case is discretionary with the jury, acting with regard to the enormity of the wrong and the necessity of preventing a similar wrong.— Treadwell Ford, Inc. v. Leek, 272 Ala. 544, 133 So.2d 24. In this connection, after charging the jury on compensatory damages, the court charged as follows on punitive damages:

> "Now the law also says that in getting to another type of damages, it would be punitive damages. The law says the policy of the law is that if you have a fraud or a deceit practiced on a person, if it is done under certain circumstances, then the law says that the jury has within its power to impose not only compensatory damages, that is, damages to repay the plaintiff, but damages to punish the defendant. And one of the cases said that if the fraud or the deceit is malicious, oppressive or gross, and the misrepresentation made with a knowledge of the falseness of the representation, or so recklessly as to amount to the same thing, or with the purposes [sic] of injuring the buyer, then punitive damages

could be awarded. In other words, I think that explains it better than anything I could add to it.

"If you have those elements, then it is a question of factor [sic] for you to pass on. All of these are questions of fact. You have to pass on the evidence to decide what has been proved, and what has not been proved. If you find that there was a fraud which was malicious or oppressive or gross or within the definition that I read to you, then you could award damages which would be for the purpose of punishing the defendant for the fraud practiced with the idea, the theory being that punitive damages are awarded for the purposes of punishing the defendant for the particular fraudulent act, and also exemplary in nature, the purposes of being to set an example, so as to deter other people from committing similar acts of that sort.

"Now that is the theory of the law. Now if punitive damages are awarded, the jury is to consider the nature of the wrong committed, the quality of the wrong committed * * *.

"In other words, you gentlemen consider all of the facts, you decide whether punitive damages ought to be awarded, if so, you decide what amount is to be awarded. You are the sole judges about that, considering the nature and the purpose of punitive damages."

We think the jury was fairly charged on the issue of punitive damages. We are not persuaded as argued by appellant that the amount of the award is such that it indicates bias or prejudice on the part of the jury. On the other hand the nature of the conduct on the part of appellant as shown by the evidence which the jury was justified in believing justifies the award. We cannot on this evidence rest a reversal on this ground.

Affirmed.

LIVINGSTON, C. J., and MERRILL and HARWOOD, JJ., concur.