448 So.2d 301 (1983)
JIM WALTER HOMES, INC., a corporation, and Mid-State Homes, Inc., a corporation
v.
Gerald D. WALDROP, et al.
81-1022.
Supreme Court of Alabama.
September 30, 1983.
Rehearing Denied April 6, 1984.
Samuel H. Franklin of Bradley, Arant, Rose & White, Birmingham, for appellants.
J. William Thomason, Bessemer, for appellees Gerald Waldrop and Lois Waldrop.
Joyce E. May of Winston, Winston & May, Birmingham, for appellee Charles Patterson.
PER CURIAM.
This is an appeal from a jury verdict in favor of Gerald D. and Lois J. Waldrop and against Jim Walter Homes, Inc., in a breach of contract action concerning construction of a home, and from a jury verdict in favor of Charles and Cathy Patterson and against Jim Walter Homes, Inc. and Mid-State Homes, Inc., on a cross-claim *302 alleging fraudulent misrepresentation in the sale of a home. We affirm in part; reverse in part; and remand.
In 1976, appellees Gerald D. and Lois J. Waldrop (the Waldrops) entered into a contract with Jim Walter Homes, Inc. (Jim Walter) whereby Jim Walter agreed to construct a house on property owned by the Waldrops. In return, the Waldrops signed a promissory note and gave Jim Walter a mortgage on the property to secure payment. No payments were due under the note and mortgage until completion of construction by Jim Walter. The note and mortgage were immediately assigned to Mid-State Homes, Inc. (Mid-State) for financing purposes.
Jim Walter and Mid-State are both subsidiary" corporations of Jim Walter Corporation, Tampa, Florida. Jim Walter is engaged in the business of building shell homes to various stages of completion. The standard written documents executed by a purchaser of a Jim Walter home in Birmingham, Alabama, include a written building contract; Exhibit "A" to the contract describing the options selected by the purchaser; Exhibit "B" defining the items included in the options described in Exhibit "A"; an agreement by the buyer to comply with the City of Birmingham or Jefferson County building codes and to obtain a certificate of occupancy; and a "receipt" whereby the purchaser acknowledges receiving copies of these documents. The evidence shows that the Waldrops signed and eventually received copies of all these documents, but they contend that they never read nor asked any questions about the documents or their terms or conditions.
Jim Walter acquired a building permit and began construction on the house in August 1976. When the house was at a suitable stage of completion, the Waldrops installed an air conditioner and turbines on the roof, painted the walls, placed flooring in the house, installed a screen door, graded the lot and paid an inspection fee to the gas company. They applied for a certificate of occupancy from the City of Hueytown, but were denied. The city inspector gave the Waldrops a list of things which needed to be finished before the City would issue the certificate. In a letter dated November 19, 1976, Mr. Waldrop informed Jim Walter that a number of items in the house would have to be completed before the city would issue a certificate of occupancy to them. Mr. Waldrop stated that he believed it was Jim Walter's responsibility to complete these items and that he did not intend to make payments on the house until it was fit for occupancy. Jim Walter wrote back acknowledging the Waldrops' letter and stating that it would look into the problem. Mr. Waldrop wrote a second letter, dated December 2, 1976, acknowledging receipt of payment cards from Jim Walter which indicated that the Waldrops were to begin making payments on the house on December 5, 1976. Mr. Waldrop renewed the assertions of his first letter and again asked that Jim Walter make the house fit for occupancy.
On March 7, 1977, Jim Walter sent a letter to the Waldrops stating that Jim Walter had investigated their complaint, but found that all the work stated in the contract as Jim Walter's responsibility had been completed and any additional items not mentioned in the contract were the Waldrops' responsibility. Paragraph 7 of the "Agreement for Buyers to Comply with City of Birmingham or Jefferson County, Alabama Building Code" reads:
"Buyers agree to completely finish all work not contracted for; obtain necessary permits, inspections, and obtain a Certificate of Occupancy before attempting to occupy the residence."
This form was part of the Jim Walter standard documents and was executed by both Gerald and Lois Waldrop. The March 7 letter also informed the Waldrops that their initial payment date had been changed to April 5, 1977.
On March 16, 1977, Mr. Waldrop sent a third letter to Jim Walter stating that he still believed it was Jim Walter's responsibility to complete the work on the house. *303 In the letter he listed eight items[1] that he believed Jim Walter was required to complete. Jim Walter did not complete the items as requested, and the Waldrops never made a payment on the house.
In May 1977, Mid-State wrote to the Waldrops declaring a default on the mortgage and giving notice of intent to foreclose. On July 8, 1977, the foreclosure sale was held and Mid-State purchased the property. Mr. Waldrop acknowledged notice of the sale and notice of his statutory right to redeem the property within one year, but testified that he was financially unable to redeem. Jim Walter then completed the items necessary to make the house suitable for occupancy and resale by Jim Walter. On June 10, 1978, Jim Walter resold the house to one Charles Patterson who is a co-defendant in this suit.
On January 10, 1978, the Waldrops filed suit against Jim Walter and Mid-State, alleging that Jim Walter had breached the written contract for the construction of the house by failing to complete it in a timely manner; that the Waldrops were entitled to rescind the contract due to failure to advise the Waldrops of certain rights under the Federal Consumer Credit Protection Act; and that Mid-State, by virtue of the recordation of a foreclosure deed, had slandered the Waldrops' title to real estate. Jim Walter and Mid-State in their respective answers denied all the allegations.
On May 1, 1980, the court granted the Waldrops' motion to amend their original complaint so as to add Charles and Cathy Patterson, as co-defendants to the lawsuit and to add a fourth count which alleged that the foreclosure proceedings conducted by Mid-State were invalid. Counsel for Jim Walter and Mid-State then filed a motion to dismiss on behalf of the Pattersons as to the claims asserted against them in the fourth count. The trial court denied the motion.
On September 21, 1981, the Pattersons, having obtained independent counsel, filed a cross-claim against Jim Walter and Mid-State. In their cross-claim, the Pattersons contended that Jim Walter and Mid-State had negotiated in June 1978 (after the filing of the original complaint by the Waldrops) to sell to them the property previously owned by the Waldrops, and that Jim Walter and Mid-State fraudulently concealed the existence of the pending litigation initiated by the Waldrops in order to induce them to purchase the property. The Pattersons claimed damages by virtue of the fact that they had been joined as defendants in the Waldrop litigation, and also sought punitive damages. Following denial of their motion to dismiss the Pattersons' cross-claim, Jim Walter and Mid-State answered the cross-claim, denying all of its allegations.
The Waldrops again were allowed to amend their complaint, on April 5, 1982, by striking the first two counts of the original complaint and adding a fifth count in which they claimed damages for "mental anguish" allegedly suffered due to breach of the building contract by Jim Walter. The Pattersons also were allowed to amend their cross-claim to seek damages for mental anguish.
The case then went to trial. At the conclusion of the evidence presented by the Waldrops, Jim Walter and Mid-South moved for a directed verdict as to each of the Waldrops' claims. The trial court granted the motion for directed verdict in favor of Jim Walter as to each claim except the breach of contract count and granted the motion for directed verdict in favor of Mid-State as to the Waldrops' claims in their entirety. Jim Walter and Mid-State also moved for a directed verdict against *304 the Patterson cross-claim at the close of the Pattersons' evidence, but the trial court overruled the motion.
On April 9, 1982, the jury returned a verdict in favor of the Waldrops and against Jim Walter in the amount of $15,000.00 and a verdict in favor of the Pattersons and against Jim Walter and Mid-State in the amount of $37,500.00, and judgments were entered thereon. Jim Walter and Mid-State proceeded to file various post-trial motions, including a motion for new trial alleging that the jury verdict in favor of the Pattersons for $37,500.00 was excessive. On July 21, 1982, the trial court entered an order finding that the verdict in favor of the Pattersons was excessive to the extent of $12,500.00 and ordered that the motion for a new trial be granted unless the Pattersons filed a remittitur. On July 28, 1982, the Pattersons accepted a remittitur and accordingly judgment was entered for $25,000.00. All the other posttrial motions were denied.
On September 1, 1982, Jim Walter and Mid-State filed a notice of appeal to this Court. They appeal from the judgments entered upon the jury verdicts in favor of both the Waldrops and the Pattersons, from the orders of the trial court overruling the motions for directed verdict as to the Waldrops' claim and the Pattersons' cross-claim, and from the denial of their motions for post-trial relief.
Appellants' first contention on appeal is that the trial court erred in allowing the Waldrops to testify, over appellants' objections, to alleged oral statements or promises made by Jim Walter's sales representative to the Waldrops prior to execution of the written contract. Mr. Waldrop was allowed to testify that Jim Walter's representative told him that they would complete the house to a point where the Waldrops could get a certificate of occupancy, except that the Waldrops would have to put in the air conditioning and heating system, paint the inside walls and stain the woodwork, and put in the floor covering. Appellants objected to this testimony on the grounds that the written agreements signed by the parties were the best evidence of the parties' respective responsibilities and, therefore, that the oral testimony was barred by the parol evidence rule.
It is generally well settled that when parties reduce a contract to a writing which is intended to be a complete contract regarding the subject covered thereunder no extrinsic evidence of prior or contemporaneous oral or written agreements will be admissible to contradict, vary, supplement, or subtract from the terms of such writing. Shepherd Realty Co. v. Winn-Dixie of Montgomery, Inc., 418 So.2d 871 (Ala. 1982); League v. Giffin, 347 So.2d 1332 (Ala.1977).
This Court, in Parker v. McGaha, 294 Ala. 702, 707, 321 So.2d 182, 185 (1975), noted, however, that "a strict, formal, and technical interpretation of the rule has long since been abandoned," and the court recognized certain exceptions to the rule, as follows:
"Parol evidence is always admissible to show that an instrument is void or to show a lack or failure of consideration. Corbin v. Sistrunk, 19 Ala. 203, 205-06 (1851);
"Evidence of fraud is always admissible, even though there is a completely integrated writing. Nelson Realty Co. v. Darling Shop, 267 Ala. 301, 309, 101 So.2d 78, 84 (1957); and
"Where there is ambiguity in a contract, parol evidence is admissible to aid in the contract's interpretation. McClendon v. Eubanks, 249 Ala. 170, 178, 30 So.2d 261, 268 (1947)."
It is apparent from the record that the Waldrops did not allege failure of consideration, fraud, or mistake in the execution of the contract. Furthermore, the question of ambiguity need not be reached, since the testimony in question tends to suggest additional terms to the contract rather than to explain any of the existing terms of the written agreement. The Waldrops offered the oral testimony to show that Jim Walter was responsible for completing the listed items required by the City of Hueytown for a certificate of occupancy, even though the *305 items are not mentioned at any point in the written contract.
Regardless of the content of the statements made by Jim Walter's salesman, it is a basic principle of contract law that these statements, as well as all prior negotiations, were merged into the written contract between the Waldrops and Jim Walter. See League v. Giffin, supra; Blake v. Coates, 292 Ala. 351, 294 So.2d 433 (1974). Moreover, the contract signed by the parties states:
"This written contract including exhibits `A' & `B' contains the price and all the terms and conditions agreed upon by the Buyer and Seller, and no statement, representation or promise not set forth in this written contact has been made to induce either party to sign this contract."
Under the facts of this case, we find that the written agreements were the best evidence of the contract between the Waldrops and Jim Walter and of their respective underlying responsibilities. Under the contract all prior oral negotiations and agreements were merged into and became part of the written contract. Thus, we opine that the trial court misapplied the parol evidence rule in allowing evidence of the oral statements made prior to the execution of the written contract from which the jury could infer the existence of contract terms in addition to those listed in the written contract. As to this issue, we reverse and remand.
Appellants' next contention is that the trial court erred in submitting to the jury the Pattersons' cross-claim for fraudulent suppression. The Pattersons alleged that Jim Walter, in order to induce them to buy, intentionally failed to disclose to them that a lawsuit was pending against the property offered for sale. The Pattersons brought their cross-claim under Code 1975, § 6-5-102, which reads:
"Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case."
Appellants contend that their motion for directed verdict on the cross-claim should have been granted, because, they say, the evidence failed to establish, as required by the statute, that (a) the existence of the litigation was a material fact; (b) appellants had a duty to apprise the Pattersons that a lawsuit was pending against Jim Walter and Mid-State concerning the property, since, at the time of the sale, a finding for the plaintiffs in the suit would not affect the Pattersons' title to the property; and (c) the non-disclosure was for purposes of inducing the Pattersons to act to their detriment. We do not agree that the motion for directed verdict was improperly denied.
At the outset, appellants' argument that the existence of the pending lawsuit was not a material fact is without merit. The materiality of a fact to a plaintiff in an action for fraudulent suppression is a question for the jury. Courtesy Ford Sales, Inc. v. Clark, 425 So.2d 1075 (Ala.1983). In the instant case, the jury found for the Pattersons on their fraudulent concealment claim; therefore, we can only infer that the jury found the concealment of the pending suit to be material.
Also, it is stated that the "materiality must either be known to the seller, or the facts must so constitute an element of the value of the contract, as to authorize the inference of knowledge of its materiality." Marshall v. Crocker, 387 So.2d 176, 179 (Ala.1980) (quoting Jordan & Sons v. Pickett, 78 Ala. 331 (1884)). In any case, a lawsuit pending against property for sale would certainly be a factor so affecting value as to authorize an inference that the seller knew of materiality. Indeed, we think it a rare case where concealment of a pending lawsuit in a sale of property would not be material, regardless of the claim involved. There is always the possibility, as the present case envinces, that the title to the property may, in some way, be challenged following the purchase. This is precisely *306 one type of situation that the statute was intended to address.
Appellants' contention that they were under no duty to disclose the existence of the lawsuit is equally unsubstantiated. The law states that in order for silence to be an actionable fraud, facts must be averred which give rise to a duty to speak. Hall Motor Co. v. Furman, 285 Ala. 499, 234 So.2d 37 (1970); Williams v. Bedenbaugh, 215 Ala. 200, 110 So. 286 (1926). The legal duty to communicate depends upon the existence of a fiduciary relationship, or relation of trust or confidence between the parties, the value of a particular fact, the relative knowledge or inequality of condition of the parties, or other attendant circumstances. Marshall v. Crocker, 387 So.2d 176 (Ala.1980); Hall Motor Co. v. Furman, 283 Ala. 499, 234 So.2d 37 (1970). This court has quoted with approval the following summary of Alabama law as stated by a federal court:
"... [T]he types of relationships wherein a duty to disclose has been found indicate that the Alabama courts give little attention to the designation of the relationship, such as vendor-vendee, etc., but instead look to the relative bargaining positions of the parties. [Citations omitted.] Where one party has some particular knowledge or expertise not shared by the plaintiff a duty to disclose has been recognized."
Jim Short Ford Sales, Inc. v. Washington, 384 So.2d 83, 87 (Ala.1980) (quoting First Virginia Bankshares v. Benson, 559 F.2d 1307 (5th Cir.1977)). Furthermore, "each case must be individually examined to determine whether a duty of disclosure exists; a rigid approach is impossible, and, indeed, the words of the statute itself counsel flexibility." Jim Short Ford Sales, Inc. v. Washington, supra, at 87.
In the instant case there is evidence which indicates that (1) M.S. Baker, the branch manager of Jim Walter, and Arle Newman, a field representative of Mid-State, knew that the Waldrop litigation was pending when they offered the property for sale to the Pattersons, (2) Mr. Newman told Bob Godwin (the salesman who dealt with the Pattersons) that there were no problems and it was all right to sell the property to the Pattersons, despite his knowledge of the pending litigation, and (3) the Pattersons were possibly in an inferior bargaining position with respect to Jim Walter and Mid-State concerning the transaction. We hold that the evidence is sufficient to create a jury question as to the existence of a duty to disclose on Jim Walter's part.
Appellants also argue that suppression of the fact of the pending lawsuit, if found, was not for the purposes of inducing the Pattersons to buy the property. Again, the determination of intention in suppressing a material fact is for the jury, see Marshall v. Crocker, supra, at 179, and, again, we infer that the jury, by entering a verdict for the Pattersons, found that Jim Walter purposefully or intentionally suppressed the existence of the lawsuit in selling the property to the Pattersons.
Also, the fact that all representations by Jim Walter to the Pattersons were made by its agent Bob Godwin, who allegedly had no knowledge of the pending litigation, will not insulate Jim Walter from liability. This court has often held that a corporation cannot escape liability in fraud cases by showing that the agent through whom it acted was without knowledge of the true facts. Shelter Modular Corp. v. Cardinal Enterprises, 347 So.2d 1334 (Ala.1977); J. Truett Payne Co. v. Jackson, 281 Ala. 426, 203 So.2d 443 (1967). This state has codified the rule at Code 1975, § 8-2-8, which reads:
"As against a principal, both principal and agent are deemed to have notice of whatever either has notice of and ought in good faith and the exercise of ordinary care and diligence to communicate to the other."
The issue of whether the principal had knowledge of the true facts is for the jury to determine. Bolton Ford of Mobile, Inc. v. Little, 344 So.2d 1208 (Ala.1977); Shelter Modular Corp. v. Cardinal Enterprises, supra. Evidence was before the jury to support an inference that Jim Walter had *307 knowledge of the lawsuit pending against the subject property. Since the evidence established Godwin's agency capacity at the time of sale to Patterson, Jim Walter's knowledge will be imputed to Godwin so as to cause Jim Walter to be liable for fraudulent concealment.
We have carefully read the record in this case. We are satisfied that there was enough evidence produced by the codefendants Patterson to make out a jury question on the issue of fraud. Based upon this finding and the reasons stated above, we hold that the trial judge did not err in denying appellants' motion for directed verdict, and we affirm as to that issue.
Appellants' final contention on appeal is that the trial court erred in submitting the Pattersons' cross-claim to the jury to the extent that the claim sought punitive damages. Appellants argue that the trial court erroneously denied their motion for directed verdict as to the punitive damages claim since, they contend, there was not sufficient evidence in the record to support a finding of intentional or reckless fraud which in turn would support a punitive damages award. We do not agree.
In J. Truett Payne Company v. Jackson, the applicable rule was set out as follows:
"It is no longer subject to question that punitive damages are allowed in this state in fraud cases where the defendant has made false misrepresentations intended to defraud the plaintiff. We have further held that the awarding of punitive damages in such a case is discretionary with the jury...."
281 Ala. at 429, 203 So.2d at 446. See also Neil Huffman Volkswagen Corp. v. Ridolphi, 378 So.2d 700 (Ala.1979); Bolton Ford of Mobile, Inc. v. Little, 344 So.2d 1208 (Ala.1977).
There is evidence in the instant case from which the jury could have concluded that Jim Walter, knowing that litigation was pending against the property, suppressed this fact with intent to deceive the Pattersons so that they would purchase the property. The trial court, therefore, properly submitted the issue of punitive damages to the jury.
We have carefully reviewed the record and briefs in this case and are of the opinion that the trial court erred in its application of the parol evidence rule, but ruled correctly on all other issues presented on appeal. Thus, we affirm as to all rulings except the parol evidence ruling, which we reverse, and we remand the case for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MADDOX, FAULKNER, JONES, ALMON, SHORES, BEATTY and ADAMS, JJ., concur.
TORBERT, C.J., concurs specially.
TORBERT, Chief Justice (concurring specially).
I want to clarify why I agree with the finding that Jim Walter Homes fraudulently suppressed a material fact in dealing with the Pattersons. Under the facts in this case, Jim Walter Homes' failure to disclose that the property to be conveyed was the subject of pending litigation was a material fact.
A material fact is one that is likely to induce action on the part of the complaining party. Cooper v. Rowe, 208 Ala. 494, 94 So. 725 (1922); Cook v. Brown, 393 So.2d 1016 (Ala.Civ.App.1981). Ordinarily, the existence of an action by a buyer seeking rescission and damages for breach of contract in a sales transaction would not be a fact that the seller must disclose to a subsequent buyer of the property. In the instant case, however, the Waldrops also alleged that the recordation of the foreclosure deed slandered the Waldrops' title to the property. The existence of a cloud on the title of the property in question is a fact that is likely to induce action by the Pattersons and is therefore a material fact.
NOTES
[1] In the third letter to Jim Walter, Mr. Waldrop listed the following eight items that had to be completed before the certificate of occupancy would be issued:

1. Kitchen cabinets installed as per blueprint.
2. Shelves and rods in closets installed.
3. Eaves boxed in.
4. Termite treatment for house.
5. Plastic ground cover installed under house.
6. Walkway and driveway installed.
7. Formica installed around the bathtub.
8. The bathroom window waterproofed.