Appeal by the defendants from a judgment for plaintiff in an action based upon fraud, fraudulent concealment, and negligence. We affirm.
The action grew out of the purchase of a 25-year-old house by plaintiff, Elbert Hubbard Wright, from Mr. and Mrs. Henry Wingate. Wright learned of the house through a salesman of Rossi and Turner *Page 121 
Realty Company. When Wright inspected the house, it was fully furnished but unoccupied. The closing took place on February 27, 1980.
Approximately two months after moving into the house, plaintiff observed certain defects in the floor and other parts. He had M.K. Johnson, an architect, inspect the house. This inspection disclosed termite damage to the floor and to one of the door frames. Ultimately plaintiff filed a complaint, originally naming the Wingates and fictitious parties. Later, however, the Wingates were dismissed because of a pro tanto
release made with plaintiff, who amended his complaint to add as defendants James W. Savage, III, and Marion Savage, d/b/a Home Pest Control Company. A later amendment added Home Specialty Pest Control Company, Inc., and Aetna Casualty and Surety Company, Inc., as defendants.
A default judgment was entered against Aetna. Summary judgment motions of the other defendants were denied, and the case was tried to a jury, which awarded $10,000.00 as damages. Defendants' motion for a new trial was denied and this appeal ensued.
Defendants have raised three issues for our review:
1. Whether the trial court erred in denying defendants' motion for summary judgment, in view of the caveat emptor rule applicable to the sale of used residential property;
2. Whether the trial court erred in submitting the issue of defendant's negligence to the jury; and
3. Whether the trial court erred in failing to grant Aetna's motion to set aside the default judgment rendered against it.
 I
The Savages' motion for summary judgment was filed for themselves and for their Birmingham franchisor. It was supported by a copy of the contract of sale between sellers and purchaser, the deposition of Mr. Wright, an affidavit of Mr. James W. Savage, and a memorandum brief. Plaintiff Wright filed a brief in opposition, with supporting affidavits of himself, Philip Pelham, and Johnny A. Block. Also filed in opposition were a stipulation on the testimony of William A. Ward, chief of the construction and evaluation section of the Montgomery Veterans Administration Office, copies of the "letter of clearance" executed by James W. Savage, the Veterans Administration "certificate of reasonable value," and the inspection report of Philip Pelham. These materials, together with the pleadings on file, disclose that the plaintiff's action against the pest control companies was based upon fraud by misrepresentation, fraud by suppression of material facts, and negligence.
Defendants argue that the case of Ray v. Montgomery,399 So.2d 230 (Ala. 1980), foreclosed any recovery against the defendants. There, the purchasers of a used house sued the sellers and a pest control company on the theories of fraud, breach of the duty to disclose termite damage to the purchasers, fraud by the pest control company in failing to disclose termite damage, and breach of contract by the pest control company in failing to adequately treat the house, with the purchasers as third party beneficiaries of that contract. This Court found no evidence of misrepresentation by the sellers to the purchasers. The contract there contained an "as is" clause and did not require a termite inspection. Moreover, there was no breach of any duty to disclose facts in Ray
because no confidential relationship was shown to exist between the seller and the purchaser. And finally, the purchasers were found not to be intended beneficiaries of the pest control service contract, because that contract had been entered into between owners who preceded the seller's title and entered into for the purpose of protecting their house as property rather than for the purpose of protecting possible subsequent purchasers. It should also be noted that in Ray this Court observed that "a purchaser may protect himself by express agreement in the deed or contract of sale." Ray, supra, at 233. *Page 122 
This case is factually distinguishable from the Ray case. The contract of purchase and sale here was no "as is" contract. Moreover, this contract contained the following clause:
 "In the event this contract necessitates the obtaining of a new mortgage loan, `it is expressly agreed that, notwithstanding any other provisions of this contract, the PURCHASER shall not be obligated to complete the purchase of the property described herein or to incur any penalty by forfeiture of earnest money, deposits or otherwise unless the SELLER has delivered to the PURCHASER a written statement issued by the Federal Housing Commissioner, Veterans Administration or Conventional appraiser, as appropriate, setting forth the appraised value of the property of not less than $25,000 which statement the SELLER agrees to deliver to the purchaser promptly after such appraised value statement is available to the SELLER."
It is clear from this completed provision and from the testimony that the purchaser here was applying for a "V.A. Loan" which required a "V.A. Appraisal" (Certificate of Reasonable Value), and a "termite certificate." The "termite certificate" to have been furnished is explained in item 26 of the "V.A. Appraisal":
 "The seller shall furnish the veteran purchaser at no cost to the veteran prior to settlement a written statement (or certification) from a recognized exterminator that based on careful visual inspection of accessible areas and on sounding of accessible structural members, there is no evidence of termite or other wood-destroying insect infestation in the subject property, and, if such infestation previously existed, it has been corrected and any damage due to such infestation has also been corrected or alternatively been fully disclosed as follows. . . ."
The testimony established that the Montgomery office of Home Pest Control Company was contacted by one of the realty agents who was handling the sale, for the purpose of obtaining the "termite certificate," or letter of clearance. This Montgomery office was operated by James W. and Marion Savage, who held a franchise agreement with Home Specialty Pest Control Company of Birmingham. It was stipulated at trial that James W. Savage was an agent, servant, or employee of the Birmingham company. Savage made the following report:
"Property,
"2322 Overhill
"Montgomery, Al.
 "Based on a careful visual inspection of accessible areas and sounding of accessible structural members there is no evidence of active Termites or other wood destroying insect infestation in the subject property.
 "If such infestation previously existed infestation has been corrected and any damage due to such infestation has been corrected or alternately [sic] been fully disclosed as follows.
"No visual structural damage.
 "This is not a guarantee that there are no Termites in this Building.
 "Yours Truly, "/s/ James W. Savage, III "Home Pest Control Co."
This document was delivered to plaintiff Wright, who acknowledged its delivery:
 "I CERTIFY THAT I HAVE RECEIVED A COPY OF THIS DOCUMENT.
 "/s/ Elbert Hubbard Wright "(Date) February 27, 1980"
Defendants nevertheless argue that the sales contract between the buyer and the sellers expressly excluded any guarantee or warranty respecting the condition of the property. Moreover, they contend that the statements in Savage's report, "No visual structural damage," and "This is not a guarantee that there are no Termites in this Building," fall within the bar to liability provided by Ray v. Montgomery, supra.
We cannot agree with that position. The gist of plaintiff's claims against the pest control defendants was fraud and negligence, not breach of contract. The *Page 123 
plaintiff's evidence opposing summary judgment established that the termite inspection was part of the loan requirements, that it was to be made in his behalf, that the "letter of clearance" was furnished by Home Pest Control Company, and that the plaintiff relied upon it to his detriment. It further tended to establish that there was "visible old termite damage" which pre-existed the inspection conducted by Savage. Savage himself maintained that he had made a careful inspection of the premises by visual inspection and by sounding accessible structural members, and found no infestation. This evidence was contradicted by evidence of plaintiff which tended to establish negligent inspection as well as misrepresentation and non-disclosure. Although Savage denied either hiding or willfully failing to disclose the existence of damage, the evidence of his "letter of clearance," which affirmatively reported "a careful visual inspection . . . and sounding" and that "[i]f such infestation previously existed infestation has been corrected and any damage due to such infestation has been corrected or alternately [sic] been fully disclosed," in the face of plaintiff's evidence of extensive and long-existing termite damage, made factual issues for the jury. Indeed, it is well established that summary judgment is authorized only when the moving party clearly shows that there is no genuine issue as to any material fact, and the movant is entitled to a judgment as a matter of law, Kutack v. Winn-Dixie Louisiana,Inc., 411 So.2d 137 (Ala. 1982); if there is a scintilla of evidence supporting the party against whom the motion is made, summary judgment may not be granted. Campbell v. Alabama PowerCo., 378 So.2d 718 (Ala. 1979). Although Savage himself had no contact with the purchaser, cf. Mid-State Homes, Inc. v.Startley, 366 So.2d 734 (Ala. 1979), and made no direct representation to the buyer, Wright, it was inferable from the materials before the court on the motion for summary judgment that James W. Savage knew not only the purpose of his employment but that his "letter of clearance" would be presented to, and was for the benefit of, the purchaser. The fact that his letter was addressed to "the property" cannot reasonably be taken as implying that Savage intended his inspection solely for the benefit of the seller. The facts show that Savage was contacted by a real estate agent in connection with the sale. It is at least inferable that Savage's representations, if they were made "to the property," so as to be made to the seller only, were made with the intention or the knowledge that the purchaser might act on them. Dexter v.Baker, 382 So.2d 552 (Ala. 1980). It is inferable therefore that, were it otherwise, Savage would not have been employed, because, were it not for the loan, an inspection would not have been necessary. There was also evidence leading to the conclusion that Savage, as the expert, was under a duty to disclose the material condition of termite damage, if any, to Wright, the layman. Hall Motor Co. v. Furman, 285 Ala. 499,234 So.2d 37 (1970). Cf. Crystal Pier Amusement Company v. Cannan,219 Cal. 184, 25 P.2d 839 (1933); Anno. 91 A.L.R. 1363 (1934).
It follows from the foregoing discussion that the doctrine ofcaveat emptor as applied in Ray v. Montgomery, supra, did not apply to the facts of this case, and that the trial court did not err in denying summary judgment.
 II
Did the trial court err in submitting the issue of negligence to the jury? We think not.
The testimony adduced by plaintiff is revealing on the negligence issue.
Plaintiff, the purchaser, testified that he made an inspection of the premises but that he was untrained insofar as inspection for termites is concerned. He testified additionally that he expected a "letter of clearance" and relied upon the representations made therein. Savage, the actual inspector, on the other hand, stated during trial that pest control work required expertise, that one so engaged had "to be able to locate damage in a particular structure," and that a layman probably would not be so familiar *Page 124 
with this specialized field and would have difficulty in knowing what to look for if looking for termites.
Plaintiff testified that following the closing, and after he had occupied the house for several months, he noticed "sponginess" in the floor at various places, spaces between the boards, and nailheads rising from the kitchen floor. He also discovered softness in a door frame. The floor in question, hardwood throughout except for kitchen and bath, was constructed upon a concrete slab. Carpet had been placed on the floors of two bedrooms and a hallway by the sellers a few months before this sale.
An architect, M.K. Johnson, inspected the house at plaintiff's request. According to his testimony, the floor was constructed with two-by-fours about sixteen inches on center, with pine one-by-sixes and one-by-eights nailed to two-by-fours (making a subfloor), with the hardwood floor above that subfloor. He noticed on inspection that the floor would "give." This problem was generally over the entire house. In his opinion it was termite damage. He recommended that a section of the floor be taken up to confirm his opinion, and Mr. Wright made arrangements to do so. Johnson was present when a section of the hardwood was removed to expose the pine subflooring. We quote his further testimony of the condition:
 "You could see, it was just deteriorated and eaten up. Then, we didn't have to cut, it was tight in some places and we lifted those pieces up and you could see that the sleepers underneath — those were the two-by-fours that ran directly on the slab — and you could tell that they were just gone.
". . .
 "They were eaten up except for the, you know, the greeny parts which termites do not eat."
As to the length of time this condition had existed, Johnson stated:
 "It wasn't fresh damage and it wasn't any sights of termites under there. If there had been actual termites, I would have seen them."
He concluded that it was old damage, two years old "or probably further back than that."
Dr. Johnny Block, Director of Agricultural Chemistry for the State of Alabama's Department of Agriculture and Industries, which regulates and licenses pest control companies, testified concerning the recommended procedure for inspection of a slab-constructed house for termites. He stated that an inspector should "sound" all wooden structural objects. He also testified that the Montgomery office of Home Pest Control Company was operating under the license issued to Home Specialty Pest Control Company in Birmingham.
Another employee of the Department of Agriculture and Industries, Philip Pelham, a specialist in wood-destroying organisms, testified to the proper manner of conducting an inspection of a slab house for termites, and of his personal inspection of the Wright home. It was his expert opinion that the termite damage in the closet of one of the bedrooms and on a closet door facing, which he found, should attract the attention of an expert. He also found termite damage in three rooms and on different sides of the house which, in his opinion, would have taken termites three years to accomplish. He further testified to the importance of "sounding" floors for evidence of termite damage.
Defendant James W. Savage, on cross-examination, conceded that specialized knowledge was required in the pest control business, and that the average layman would not likely know what to look for during a termite inspection. Savage also stated that he had received only ten days of formal training in such work, and had failed the test for "certified operator" administered by the State of Alabama on wood-destroying organisms. He testified that the Montgomery office should have had a certified operator but had operated for years without one, and that the Birmingham office gave annual updates on literature but did not actively supervise the Montgomery operation nor conduct annual training sessions for them. He himself operated under the *Page 125 
authority of another person's license who neither regularly supervised him nor inspected his work. Savage testified further that it was necessary for him to inspect for termites by "sounding" as well as visually to assure the purchaser that the house had been inspected. Savage maintained that he had "sounded" the house and that the letter of clearance was accurate, i.e. that he found "no visual structural damage." Savage also testified that he knew that this letter would be used to "assure the home owner that the house has been inspected and is okay . . . as far as termites go" and "to give assurance to people who are buying old houses that there is not any problem with the termite damage." Additionally, Savage knew that this letter was being issued in connection with a loan closing and that it would be submitted to the purchaser.
This evidence clearly made out a case for submission to the jury on the issue of negligence of the defendants. Cf. Waitesv. Toran, 411 So.2d 127 (Ala. 1982); United States Fidelity Guaranty Co. v. Jones, 356 So.2d 596 (Ala. 1978).
 III
Did the trial court err in denying Aetna's motion to set the default judgment aside?
Count V of plaintiff's complaint was added by amendment on August 24, 1981, making Aetna Casualty and Surety Company a party defendant. It was alleged that defendants Savage, d/b/a Home Pest Control Company, were bonded through their parent company in Birmingham, and that Aetna was the surety on that bond. The bond, it was further alleged, was required by Code of 1975, § 2-28-10 (a), and had been breached by the defendant-principal by "failure to perform under the bond in a skillful and workmanlike manner and as otherwise required by law."
On September 14, 1981, service of process was obtained on Aetna's registered agent. The record also shows that on August 26, 1981, by mail sent to its home office, Aetna was notified of the claim under its bond. No appearance having been filed, on October 21, 1981, plaintiff obtained a default judgment against Aetna. On October 26, 1981, Aetna moved to set the default aside. A hearing on the motion was heard on November 25, 1981, after which the motion was denied. In its motion, Aetna alleged "they have defenses to assert," and "that the failing to answer . . . was based upon reasonable misunderstandings." No specific averment of any meritorious defense was made, nor does the record disclose any such offer of proof at the hearing on the motion.
Under Rule 55 (c), A.R.Civ.P., the trial court "may set aside an entry of default and the court may set aside a judgment of default within 30 days thereafter." In its discretion the trial court refused to do so in this instance. No Rule 60 (b) motion was made by Aetna. In order to obtain relief from a default judgment, one must allege and prove a meritorious defense.Raine v. First Western Bank, 362 So.2d 846 (Ala. 1978). No such proof having been made, the trial court did not err in denying the motion.
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.