BEATTY, Justice.
Appeal by defendants, Jerry T. Mays and Harold Brooks, from summary judgment for plaintiff, Johnson Products, Inc., in plaintiff’s action to recover damages based upon an account stated, open account, breach of contract, breach of contract of guaranty, and fraud. We reverse and remand.
Plaintiffs action arose from a business relationship in which plaintiff had sold to Willow Creek, Inc., a co-defendant, certain products used in the manufacture of mobile homes. Mays and Brooks were alleged, among other things, to have individually executed a personal guaranty agreement with plaintiff in which they guaranteed the payment of accounts Willow Creek had with plaintiff. It was alleged that this guaranty was made to induce plaintiff to make sales on credit to Willow Creek, and that as a result such sales occurred.
The defendants answered the complaint by alleging that this guaranty was procured by fraud on the part of the plaintiff. Defendants also counterclaimed for damages based upon fraud of an agent of plaintiff, who, they say, while in the line and scope of his employment, fraudulently procured the guaranty by representing that it was a credit application and not a guaranty. Both sides moved for summary judgment. In due course, the trial court granted summary judgment for the plaintiff, certifying it as final under Rule 54(b), A.R. Civ.P. This appeal followed.
Defendants’ motion for summary judgment was supported by the depositions of Harold Brooks, Allen Neill, and David Faulkner.
Harold Brooks[1] testified concerning the execution of the document in question:
“A. I recognize this as a credit application.
“Q. Do you recognize that document?
“A. Yes.
“Q. Is that the one you signed?
“A. Yes, sir.
“Q. Can you tell us the circumstances under which you signed it — where you were when you signed it, who was there, what was said?
“A. I was in Jerry Mays’ office at Southland Furniture. I was handed this right here and it was explained that it was a credit application only. Mr. Mays asked him if it was only a credit application.
“Q. Excuse me. Asked who?
“A. The gentleman that brought the paper.
“Q. And who brought the paper?
“A. I think it was Mr. Allan. I’m not sure.
“Q. Excuse me. Keep going. He asked him if?
“A. Yes, my partner asked the gentleman, ‘Is this only a credit application?’ He said, ‘That is only a credit application.’ Therefore, we signed it. There was not a personal guaranty mentioned at any time other than the fact that my partner asked if it involved a personal guaranty. We were then told, ‘No,’ it was not, that it was a credit application only. So, therefore, we signed it.”
Jerry Mays testified to the same effect:
“Q. I want to show you this document which has been previously marked as plaintiff’s exhibit one, page A and page B, and ask you if you’ll take a look at it and tell me whether or not you recognize it.
*217 “A. I don’t recognize it specifically but I remember signing the credit application one time.
“Q. All right, sir, but you can’t say that that — you don’t remember that particular document?
“A. Well, it’s the only thing that I signed in relation to Johnson Products.
“Q. OK, do you remember the circumstances of signing it?
“A. Some guy came in while I was eating lunch one day in a restaurant there and he was with some more people, Rick Kennedy, I think, from Willow Creek, and he introduced me to this individual and told me he was a representative of Johnson Products.
“Q. Excuse me for interrupting. Do you mean Rick Kennedy introduced you to the representative of Johnson Products?
“A. Yes.
“Q. OK.
“A. And he said he wanted some credit information on us, and he asked if it would be all right to fill out a credit application. I said, ‘Fine,’ and then he came over and wanted me to sign it. And I asked him the direct question: ‘Is this the personal guarantee?’ and he said ‘No.’ He said, ‘It is a credit application.’
“Q. OK and did you then sign it?
“A. He folded it down on the table and I signed it.
“Q. What do you mean, ‘He folded it down on the table’?
“A. He had some more papers in his hand and he left a blank place for me to sign it.”
Examination of the record reveals that, on its motion for summary judgment, plaintiff argued: “A person signing a document cannot later complain that he could not read or that he did not understand the document, or that he did not understand that he would be personally liable.” The correct rule, however, and the one applicable to this case, is found in Gunnels v. Jimmerson, 331 So.2d 247, 250 (Ala.1976): “One who has executed a written contract in ignorance of its contents cannot set up his ignorance to avoid the obligation in the absence of fraud or misrepresentation.”
There was some evidence here that the guaranty executed by the defendants was induced by fraud. Earnest v. Pritch-ett-Moore, Inc., 401 So.2d 752 (Ala.1981). Summary judgment, therefore, was inappropriate. Savage v. Wright, 439 So.2d 120 (Ala.1983).
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, ALMON and HOUSTON, JJ., concur.

. There was some evidence that Brooks had difficulty reading.