PER CURIAM.
On December 22, 1987, David Vance Lucas and his wife Michele Lucas bought a house in Huntsville from Robert DeYoung, Jr., that had been covered by a termite bond with Hodges Pest Control Company since August 1962. The Lucases renewed that bond in August 1988. In January 1989, the Lucases called another pest control company to treat the crawl space of their house for mice. According to the Lucases, the agent for that company told them that he had observed extensive, visible subfloor damage and active infestation by wood-destroying organisms. As a result, the Lucases had the Alabama Department of Agriculture and Industries inspect their house on February 27, 1989. Larry Dean of that department inspected the house and reported that he had observed recent “powder post beetle” activity, as well as light rot, in the crawl space of the house.
The Lucases sued DeYoung; Clifford Hodges, individually and doing business as Hodges Pest Control Company; and Jim Sasser, an employee of Hodges Pest Control, alleging fraud (both misrepresentation and suppression of material facts), negligence, wantonness, and conspiracy and seeking $70,000 in compensatory damages and $100,000 in punitive damages; the Lu-cases also sued DeYoung, alleging breach of contract. The trial court entered a summary judgment for all of the defendants, and the Lucases appeal.[1]
We begin by noting that a summary judgment is proper only if there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Breen v. Baldwin County Federal Savings Bank, 567 So.2d 1329 (Ala.1990). The moving party must make a prima facie showing that no genuine issue of material fact exists before the burden shifts to the nonmoving party to produce substantial evidence showing such an issue of fact. Raymond v. Amason, 565 So.2d 614 (Ala.1990). Thus, we must first determine whether defendants Hodges and Sasser presented a prima facie showing that no genuine issue of material fact existed with regard to the Lucases’ claims of fraud, negligence, wantonness, and conspiracy. The defendants based their motion for summary judgment on the pleadings and on the depositions of David and Michele Lucas, DeYoung, Sas-ser, Hodges, Dean, and Jackson Burwell, the closing attorney (who was also Michele Lucas’s employer). In opposing the motion, the Lucases relied on the same depositions and pleadings.
FRAUD CLAIMS
A. Misrepresentation
The gist of the Lucases’ misrepresentation claim is that the defendants represented in a “courtesy letter” that, at the date of the last inspection by Hodges Pest Control, September 3, 1987, there were no active termites when there was, according to the Lucases, active infestation as well as pre-existing damage. The September 3 inspection report states, “This property has *156 been inspected by Hodges Pest Control Co. and is clear of insects or fungus mentioned above as checked in the blocks.” The blocks checked on the report are “Subterranean Termites and Powder Post Beetle,” “Carpenter Ants,” and “Control of Dry Rot.”
The document from Hodges Pest Control that DeYoung provided the Lucases at the closing is dated December 22, 1987, and reads:
“This is to advise [that] Hodges Pest Control Co. has had a termite contract on house located at 201 Dement St. since 8-11-1962. This contract is active until 8-11-1988.
“Last inspection was done on 9-3-87. At that date there [were] no active termites.”
(Emphasis added.) The document, which Sasser signed as manager, is silent with regard to any pre-existing damage. Sasser stated in his deposition that the document was not a standard clearance letter but was, instead, a “courtesy letter.”
Dean’s report to the Department of Agriculture and Industries, dated February 27, 1989, states, under the heading “Pest Activity,” that there was no visible activity of subterranean termites. However, under that same heading, he notes that there was recent activity of powder post beetles and light, active rot. Under the heading “Structural Pest Damage Observed,” Dean noted “PPB [powder post beetle] light termite, light rot” in the crawl space of the house.
Dean stated in his deposition that although he did not observe active termites on February 27,1989, he did see indications of recent activity. When asked how recent the activity had been, he replied, “I would say that it appeared probably in the last four months, within the last year, probably, what I saw, what I looked at.” When asked whether the recent activity could have occurred since Hodges Pest Control’s last inspection, he responded, “[I]t’s possible that the activity occurred since then.”
Most telling, however, is the following deposition testimony by Dean:
“Q. You didn’t find any active termites when you were out there?
“A. No, sir.
[[Image here]]
“Q. Is there anything that you saw that would make you believe that there were active termites on the date of the inspection on 9-3-87?
“A. No, sir, I didn’t see anything that I thought would indicate there was activity there at that time.”
(Emphasis added.)
The requisite elements of a fraudulent misrepresentation claim are 1) a false representation; 2) concerning a material fact; 3) reliance by the plaintiff (such reliance must be “justifiable,” Hickox v. Stover, 551 So.2d 259 (Ala.1989)); and 4) damage occurring as a proximate result. Harper v. First Alabama Bank of Dothan, 514 So.2d 1366 (Ala.1987).
We find that the defendants presented a prima facie case, which the Lucases failed to rebut, that there had been no misrepresentation. There was no evidence that the defendants falsely represented to the Lu-cases in the courtesy letter that there was no active infestation at the time of Hodges Pest Control’s last inspection. Moreover, because the courtesy letter did not state that the house had no termite damage, the misrepresentation claim with regard to that fact necessarily fails.
B. Suppression
We do not reach the same conclusion, however, with regard to the Lucases’ claim that the defendants suppressed the fact that the house had pre-existing damage. Ala.Code 1975, § 6-5-102, states:
“Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case.”
Both Cornelius v. Austin, 542 So.2d 1220 (Ala.1989), and Ray v. Montgomery, 399 So.2d 230 (Ala.1980), reaffirmed the caveat emptor rule in Alabama with re *157 gard to the sale of used residential real estate. We find the instant case, however, to be factually distinguishable from those cases and controlled, instead, by Savage v. Wright, 439 So.2d 120 (Ala.1983).
First, the parties in Ray v. Montgomery executed a written contract that contained an “as is” provision. Second, the purchasers in Ray v. Montgomery sued the pest control company for, among other things, breach of its contract with the sellers, which contract this Court held was executed for the benefit of the sellers only, not the purchasers. Here, the Lucases had an oral contract with DeYoung concerning the sale of the house and did not sue Sasser or Hodges for breach of their contract with DeYoung. Finally, the purchasers’ suit in Cornelius v. Austin concerned only the vendors; it did not involve a pest control company.
In Savage v. Wright, supra, this Court affirmed a $10,000 judgment based on a jury verdict against the defendant pest control company in an action alleging fraudulent misrepresentation, fraudulent concealment, and negligence. Two months after moving into a 25-year-old house, the purchaser discovered certain defects in the floor and other areas, which a later inspection by an architect revealed to be termite damage.
This Court distinguished Savage v. Wright from Ray v. Montgomery based on the fact that the contract in Savage v. Wright lacked an “as is” provision and contained a clause making the sale contingent upon the purchaser’s obtaining a loan guaranteed by the Veterans’ Administration (“VA”), which required a “termite certificate” or letter of clearance from a recognized exterminator. This Court further noted that the suit against the exterminator was based on alleged fraud and negligence, not breach of contract. Of particular importance was the fact that even though the exterminator’s employee had no contact with the purchaser, the evidence offered in opposition to the summary judgment motion showed that the employee knew the letter would be presented to, and was for the benefit of, the purchaser. Finally, this Court held that “[tjhere was also evidence leading to the conclusion that Savage [the employer], as the expert, was under a duty to disclose the material condition of termite damage, if any, to Wright [the purchaser], the layman.” 439 So.2d at 123 (citations omitted).
With regard to the duty to disclose, this Court has stated:
“ ‘[T]he types of relationships wherein a duty to disclose has been found indicate that the Alabama courts give little attention to the designation of the relationship, such as vendor-vendee, etc., but instead look to the relative bargaining positions of the parties. [Citations omitted.] Where one party has some particular knowledge or expertise not shared by the plaintiff a duty to disclose has been recognized.’
“Jim Short Ford Sales, Inc. v. Washington, 384 So.2d 83, 87 (Ala.1980) (quoting First Virginia Bankshares v. Benson, 559 F.2d 1307 (5th Cir.1977)). Furthermore, ‘each case must be individually examined to determine whether a duty of disclosure exists; a rigid approach is impossible, and, indeed, the words of the statute itself counsel flexibility.’ Jim Short Ford Sales, Inc. v. Washington, supra, at 87.”
Jim Walter Homes, Inc. v. Waldrop, 448 So.2d 301, 306 (Ala.1983) (emphasis added).
We find, here, that Hodges, as an expert in termite matters, was under a duty to disclose to the Lucases the termite damage in the courtesy letter to them. As Sasser’s deposition indicates, Sasser was fully aware of the damage to the house as early as 1981 and was aware that DeYoung needed the letter to sell his house.
Specifically, Sasser said that DeYoung came by his office and requested a letter stating that the house was under contract, stating the date of the last treatment of the house, and stating the expiration date of the contract. Sasser said he told DeYoung that if he wanted a standard clearance letter, Hodges Pest Control would have to inspect the house 30 days prior to closing and report its findings on a special form. He said DeYoung responded by saying that *158 that was not what he needed because the sale was owner-financed and not subject to VA or Federal Housing Administration (“FHA”) requirements. Sasser stated as follows regarding that conversation:
“Q. What did you understand [DeYoung] wanted from you?
“A. He wanted a letter stating the date the house was treated and if it was still under contract.
“Q. And you told him to get a full clearance letter that you had to have an inspection?
“A. A clearance letter that is required by VA and FHA and conventional, there is a special form that you have to fill out, that they won’t accept a letter of that type, and that there would be a charge and would have to be inspected,' have an inspection within 30 days.
“Q. All right. And he said he didn’t want an inspection?
“A. He said he didn’t need that.
“Q. Well, what prompted you, Mr. Sas-ser, to put this last sentence on there that says, ‘At that time there were no active termites’?
“A. He wanted to know what the last inspection report said, and I said at that time it had no active termites.
“Q. Well, what prompted you not to put powder post beetles on there?
“A. I don’t know, sir.
“Q. Because that’s checked on your last inspection report also, isn’t it? Am I correct?
“A. That’s right. Correct.
“Q. Now, on your last inspection report before you wrote this letter, where does it say there [are] no active termites?
“A. It [doesn’t] say.
“Q. It [doesn’t] say that, does it?
“A. No, sir, it [doesn’t].
“Q. Okay. So what prompted you to add the word ‘active’?
“A. That’s what he wanted.
“Q. Did he want a letter that said ‘no active termites’?
“A. He wanted a letter stating, like I stated before, the date it was treated and what it was treated for or how long it was in force.
“Q. And that’s all he wanted?
“A. And he wanted it stated on there that it didn’t have any active termites.
“Q. He wanted that actively stated?
“A. Yes, sir.
“Q. So he specifically said, ‘I want the letter to state that there [are] no active termites’?
“A. I don’t know if he said it in [those] exact words.
“Q. But in substance you understood that’s what he wanted?
“A. Right.
“Q. What did you understand that he was going to do with this letter?
“A. He said he was selling his house, and he wanted verification that it had a contract on it.”
We find it immaterial that the letter here is not a standard “clearance” letter, which, according to Sasser’s testimony, would have mandated disclosure of the damage. Once Sasser, as a representative of Hodges Pest Control, undertook to issue a letter concerning the last inspection, he owed the Lucases a duty to disclose the full situation, not just a duty to tell them whether there was an active infestation.[2] Thus, the record contains substantial evidence (see Ala.Code 1975, § 12-21-12) in support of the Lucases’ contention that the defendants suppressed the fact of the damage, and the summary judgment was not proper on that claim.
NEGLIGENCE AND WANTONNESS
We also find, based upon the above-quoted deposition testimony of Sasser, that the defendants failed to make a prima facie showing that the letter was not issued neg *159 ligently or wantonly. There was evidence that DeYoung simply told Sasser how he wanted the letter to read and that Sasser complied. Sasser admitted that he did not discuss the pre-existing damage with DeYoung, even though Sasser was aware of it. Thus, the summary judgment was also improper as to the negligence and wantonness claims.
CONSPIRACY
Finally, we hold that there was insufficient evidence, as a matter of law, to rebut the defendants’ prima facie showing that there was no conspiracy. In their second amended complaint, the Lucases alleged that DeYoung and Hodges Pest Control, through Sasser, had conspired to defraud them. The record contains no substantial evidence to support that allegation. There is no evidence that DeYoung asked Sasser to withhold the information regarding the termite damage; at most, the evidence shows that Sasser himself chose to suppress the evidence or knowledge of the damage.
Thus, the summary judgment for the defendants is affirmed as to the misrepresentation and conspiracy claims, but is reversed in all other respects, and the cause is remanded.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
ALMON, ADAMS, HOUSTON, STEAGALL and INGRAM, JJ., concur.

. By order of this Court dated January 7, 1991, DeYoung was voluntarily dismissed as an appel-lee. Thus, our analysis concerns only the allegations against Hodges and Sasser.

. We note, at this point, that there is a discrepancy in the record regarding the copy of the inspection report provided to the Department of Agriculture and Industries and the copy in Hodges’s possession. The agency copy has a check mark that has been blacked out next to a statement to the effect that the property was inspected and re-treated for insects; however, on Hodges’s copy, the check mark appears to have been “whited" out.